UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH VIOLA ET AL. | * | CIVIL ACTION NO. 22-00772 |
| | * | |
| VERSUS | * | SECTION: "R"(1) |
| | * | |
| UNITED PROPERTY & CASUALTY INSURANCE COMPANY, ET AL | * | JUDGE SARAH S. VANCE |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

ORDER AND REASONS

Before the Court is the Motion to Quash Discovery, or in the Alternative, for a Protective Order filed by Defendant, Louisiana Insurance Guaranty Association ("LIGA" or "Defendant"). (Rec. Doc. 35). In this Hurricane Ida property insurance dispute, Plaintiffs propounded 231 requests for admission on Defendant, largely seeking Defendant to admit or deny whether it paid for specific actions related to specific items in the home, such as "pay[ing] to seal and paint the baseboard in the living room," or "pay[ing] to clean the stud wall in the living room," or "pay[ing] to detach and reset the window blinds in the living room."[1] Defendant objects to the requests, arguing that "[t]he sheer number and nature of the requests, when coupled with the known contractor estimate [which Plaintiffs retained], are overly burdensome and not proportional." Rec. Doc. 35-1 at pp. 1-2. The Court agrees with Defendant and GRANTS the motion to quash.

Background

This is a Hurricane Ida property insurance dispute. Plaintiffs filed suit on March 25, 2022. Rec. Doc. 1. On February 20, 2023, Plaintiffs' insurer, United Property & Casualty ("UPC"), was declared insolvent and placed into liquidation. Rec. Doc. 20. As the statutory successor in interest

---

[1] *See* Rec. Doc. 35-2 at p. 7, Plaintiffs' Requests for Admission Nos. 24, 26, 30.

1

to UPC pursuant to La. R.S. 22:2058(A), the Court substituted LIGA as the proper defendant in the matter on August 25, 2023. Rec. Doc. 23. Prior to its dissolution, UPC provided an estimate from a public adjuster—of which Plaintiffs are in possession—and UPC paid Plaintiffs approximately $45,000 for their damages. Rec. Doc. 37 at p. 4; Rec. Doc. 38 at pp. 2-3.

In or around October 2024, Plaintiffs provided an estimate from DMD Renovations, LLC of all the damages needed to be repaired and their purported costs. Rec. Doc. 38 at p. 3. According to Defendant, this estimate "breaks down the cost to repair Plaintiffs' damage on a room-by-room basis, along with electrical, HVAC, trash removal, and fencing." *Id.* "While LIGA does not agree to the scope of the[] repairs," Defendant submits that the parties, "have identified the universe of claimed damages and the costs thereof." *Id.* According to Plaintiffs, Plaintiffs propounded requests for admission that largely track this "enumerated line-item estimate" and ask whether "payment was made and coverage accepted for each submitted line-item." *See* Rec. Doc. 37 at p. 4. By Defendant's count, Plaintiffs propounded 231 requests, 227 of which are of the "admit you did not pay for X" variety. Rec. Doc. 35-1 at p. 2.

## Law and Analysis

1. *The scope of discovery.*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In determining proportionality, the parties (and the Court if called to weigh in) should consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* While this rule is broad, it is tempered by Rule 26(b)(2), which both permits a court to limit discovery and requires a court, on motion or on its own, to limit discovery (1) that is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient, less burdensome, or less expensive; (2) when the party seeking discovery has had ample opportunity obtain the information by discovery in the action; or (3) when the discovery is outside the scope of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(A); FED. R. CIV. P. 26(b)(2)(C). Similarly, Rule26(c)(1) provides that the Court may, for good cause, issue an order limiting discovery in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. FED. R. CIV. P. 26(C)(1).

2. *Plaintiffs' Requests for Admission*

Plaintiffs have propounded 231 requests for admission on Defendant. Plaintiffs contend that their 231 requests are "essential to narrowing the scope of disputed issues at trial, making the propounded Requests both reasonable and necessary." Rec. Doc. 37 at p. 1. Plaintiffs contend that they are only asking Defendant to identify which line-item repairs Defendant accepted and which are unpaid or rejected—information that Plaintiffs assert Defendant "would necessarily have to demonstrate . . . at trial." *Id.* at p. 4. On the other hand, Defendant argues that because Plaintiffs are in possession of all UPC estimates relating to Plaintiffs' claims, and because LIGA would have to speculate as to the exact nature and scope of the three year-old estimates and payment by UPC (a now defunct company in which "there is no one to whom inquiry may be made"), it is neither reasonable nor proportional to the needs of the case. Rec. Doc. 38 at pp. 4-5. Defendant also (correctly) points out that it is Plaintiffs, not Defendant, who will bear the burden of proof at trial. *Id.*

The Court finds Defendant's arguments far more persuasive. While discovery can be broad, it is not unlimited. Requiring Defendant to respond to 231 requests for admission is not proportional to the needs of this case. Even the caselaw Plaintiffs cite supports this finding. Indeed, while Plaintiffs indicate that the court in *Kervin v. Supreme Service & Specialty Co.* held that, "even a large number of requests may be justified where they seek relevant information," Rec. Doc. 37 at p. 5, a quick glance at this case demonstrates the exact opposite. No. 15-01172, 2016 WL 8257256 (E.D. La. May 24, 2016).

In *Kervin*, the defendant propounded numerous requests for admission on each opt-in plaintiff in a collective action, ranging from between 5 to 518 requests individually. *Id.* at *2. Despite Plaintiffs' contentions otherwise here, the *Kervin* court found that the volume of the individual requests was overly burdensome. *Id.* at *5. Specifically, the court noted that the 250 requests for admission served on the representative plaintiff were "very tedious and would require a lengthy review of [defendant's] records." *Id.* Ultimately, the court limited the number of requests for admission to no more than 15 requests for certain opt-in plaintiffs and held that "written discovery should not otherwise be available to or otherwise in the possession of the defendant." *Id.* at *6. Thus, despite Plaintiffs' attempts to use *Kervin* as support for their argument, it actually stands for the opposite: there is such thing as too many requests for admission, even if they are relevant—*particularly* when many of the propounded requests for admission would be evident from documents that are already in the propounding party's possession. *See id.* at *5 ("In reviewing the Requests for Admission propounded by Supreme many of the 'admissions' would be evident from their own records[.]").

While *Kervin* is in the context of a collective action, the Court finds its relevant reasoning and holding equally applicable here. As Defendant correctly points out, Plaintiffs have both the

UPC estimates and their own estimates from DMD Renovations in their possession. The universe of claimed damages, and the costs thereof, have thus already been identified, and "[n]othing precludes Plaintiffs from determining which items were paid or not as contained in the UPC estimates and arguing accordingly." *See* Rec. Doc. 38 at p. 3. Moreover, it would be unduly burdensome to require Defendant—an entity not responsible for creating the estimate—to review Plaintiffs' 231 requests for admission and compare them to UPC's estimate in order to determine whether highly specific items in the property were covered or rejected by the insurer. The Court also notes that the sheer volume of these requests is also not proportional to the needs of the case, and many of the requests, such as whether Defendant paid to remove and replace the outlets or switch covers in multiple rooms,[2] will provide marginal assistance in streamlining the issues for trial. Accordingly,

IT IS ORDERED that Defendant's Motion to Quash Discovery, or in the Alternative, for a Protective Order filed by Defendant is GRANTED (Rec. Doc. 35). Plaintiffs' first requests for admission are quashed, and Defendant is not required to answer the requests contained therein.

New Orleans, Louisiana, this 27th day of March, 2025.

                                              Janis van Meerveld
                                     United States Magistrate Judge

---

[2] *See* Rec. Doc. 35-2, Plaintiffs' Requests for Admission Nos. 37, 66, 85, 104, 126, 147, 177, 210, 225.